## DEUPREE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 27, 1924.)

No. 4265.

**1. Criminal law ⟚1044—Motion for directed verdict necessary to review of evidence.**

Where a motion by defendant for directed verdict at the close of the government's case is denied, with reserved exceptions, and defendant proceeds to introduce evidence without renewing the motion on the close of all the evidence, the sufficiency of the evidence cannot be reviewed by the appellate court.

**2. Criminal law ⟚1037(1) — Improper remarks by prosecuting attorney must be objected to.**

When no objection is taken to remarks of the prosecuting attorney during the trial, it is too late to raise the question in the appellate court.

**3. Criminal law ⟚1030(1)—Objection and exception essential to review.**

Judicial Code, § 269, as amended (Comp. St. Ann. Supp. 1919, § 1246), is intended to prevent reversals for technical errors, which, though properly preserved, do not affect substantial rights, and does not dispense with the necessity of objection and exceptions.

**4. Criminal law ⟚1038(1)—An instruction is not reviewable, in the absence of objection or request for other instruction.**

Where an instruction given was not objected to, and no request was made for other or further instruction, it is not assignable as error.

**5. Criminal law ⟚1172(1) — An instruction held not prejudicial.**

An instruction held not prejudicial where, on defendant's own theory of the law, the evidence was ample to sustain a conviction.

**6. Banks and banking ⟚62 — Instruction in prosecution for misapplication of funds not erroneous.**

In the prosecution of the cashier of a national bank for willful misapplication of its funds, an instruction that restoration or securing of the amount admittedly due the bank, after indictment and a few days before the trial, was not of great, if any, weight as bearing on the question of intent, held not erroneous.

**7. Witnesses ⟚277(2)—Cross-examination of defendant, prosecuted for misappropriation of bank's funds, held proper.**

In the prosecution of the cashier of a national bank for misappropriation of its funds, permitting defendant to be asked on cross-examination if he was not later joined in a distant city by a woman to whom some of the funds were diverted, held proper as bearing on the question of intent.

In Error to the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

Criminal prosecution by the United States against L. E. Deupree. Judgment of conviction, and defendant brings error. Affirmed.

The counts of the indictment under which the plaintiff in error was convicted are the fourth, fifth, sixth, seventh, and eighth; the fourth alleging, in substance, that he was at the time therein mentioned cashier of the First National Bank of Dubois, Idaho, having as such the control of its moneys, funds, and credits, and did, with intent to defraud the bank, fraudulently convert to the use of himself and wife $400 of such money on a note signed by himself, dated December 8, 1922, made payable June 8, 1923, without any security, the maker not being financially able to pay it, and without any reasonable prospects of being able to do so, as he at the time well knew. The fifth count alleged, in substance, that the plaintiff in error, while cashier of the bank and in control of its moneys, funds, and credits, fraudulently converted to his use and to the use of one Rhoda Harn $100 of the bank's money upon a cashier's check for that sum, dated January 2, 1923, made payable to his order and signed with his name as cashier, which he caused to be charged to his individual checking account in the bank; he at the time not having sufficient credit balance with which to pay the check, and its repayment not being in any way secured. The sixth count charged, in substance, that the plaintiff in error, while such cashier and in control of the moneys, funds, and credits of the bank, did, with intent to defraud it, and for the benefit of himself and wife, pay out of its funds $1,100 upon a note for that amount, dated January 12, 1923, made payable June 12, 1923, and signed with the name of D. M. Nichols as its maker, which note was not at all secured, and which maker was not financially able to pay the same, and was without any reasonable prospect of being able to do so, as the plaintiff in error then and there well knew, all

of which money was wholly lost to the bank. The seventh count charged, in effect, that the plaintiff in error, while cashier of the bank and in control of its funds, did on the 23d day of December, 1922, with intent to defraud it, abstract and convert to his own use $40 of the bank's money. And the eighth count charged that on the 9th day of January, 1923, while such cashier and in charge of its moneys, and with intent to defraud it, he abstracted and converted to his own use $87.50 of the funds of the bank.

The record shows that upon the trial of the case the defendant, upon the conclusion of the evidence on the part of the prosecution, moved for an instructed verdict in his favor, which motion being denied, he proceeded to introduce evidence on his own behalf; the motion not having been renewed upon the conclusion of all of the evidence. The record further shows that no objection or exception was taken during the trial to any remarks made in argument by the United States attorney; such objection, however, being here made.

J. H. Peterson and T. C. Coffin, both of Pocatello, Idaho, for plaintiff in error.

E. G. Davis, U. S. Atty., and James F. Ailshie, Jr., Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1, 2] It has been repeatly held by this court that, where a motion for a directed verdict is made upon the conclusion of the case for the government, and denied, with a reserved exception, and the defendant proceeds to introduce evidence on his own behalf, without renewing upon the close of all of the evidence the motion before made, the sufficiency of the evidence cannot be reviewed by the appellate court. United States v. McDonald (D. C.) 293 F. 433; Clark v. United States, 245 F. 112, 157 C. C. A. 408; Thlinket Packing Co. v. United States, 236 F. 109, 149 C. C. A. 319. It has also been repeatedly held by this court that, where no objection is taken to the remarks of the prosecuting attorney during the trial, it is too late to raise the question here. See McDonough v. United States (C. C. A.) 299 F. 30, 38, 39, and cases there cited.

[3] Our attention has been called by counsel for the plaintiff in error to the decision of the Circuit Court of Appeals for the Eighth Circuit in the case of August v. United States, 257 F. 388, 392, 168 C. C. A. 428, where that court held that the amendment to section 269 of the Judicial Code, made by the Act of February 26, 1919, c. 48, (Comp. St. Ann. Supp. 1919, § 1246), declaring that "on the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties," "fully authorizes and commands us to look to the entire record before the court, and render judgment without regard to the technical error of the want of exceptions to the remarks of counsel."

We are not able to take that view of that amendment. In the recent case of Robilio v. United States, 291 F. 975, the Circuit Court of Appeals for the Sixth Circuit said:

"In our opinion, while amended section 269 does not attempt to sanction a violation of substantial rights, or to disregard prejudice (West v. United States [C. C. A. 6] 258 F. 413, 415, 169 C. C. A. 429; Consolidation Co. v. Peninsular Co. [C. C. A. 6] 272 F. 625, 633), it does not extend the authority of the reviewing court, in the interest of a plaintiff in error, beyond that permissible under the previously existing rule for preventing miscarriage of justice (Katz v. United States [C. C. A. 1] 273 F. 157, 158, 159). A prominent object seems to have been to prevent reversal of judgments for mere technical errors which did not prejudice. Kirk v. United States (C. C. A. 8) 280 F. 506, 507; Lucadamo v. United States (C. C. A. 2) 280 F. 653, 658; Honeycutt v. United States (C. C. A. 4) 277 F. 941, 944; Southern Oil Corp. v. Waggoner (C. C. A. 5) 276 F. 487, 490. The statute has been so treated by us. It is the generally accepted rule that the section does not dispense with the necessity of objection or exception, both as respects the admission and rejection of testimony and the charge to the jury. Carson v. Jackson, 281 F. 411, 416, 417, 52 App. D. C. 51; Thompson v. United States (C. C. A. 3) 283 F. 895, 896, 897; Roberts v. United States (C. C. A. 8) 283 F. 960, 967; Rosen v. United States (C. C. A. 2) 271 F. 651, 653; De Jianne v. United States (C. C. A. 3) 282 F. 737, 739; Standard v. Allen, 267 F. 645, 647, 50 App. D. C. 87. And such has been the practice of this court."

And in the case of Bilboa v. United States, 287 F. 125, 126, this court held:

"This rule is not changed or modified by the Act of February 26, 1919, amending section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246), which declares that appellate courts shall give judgment after examination of the entire record, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties. The purpose of this amendment is to prevent reversals based on technical errors, which, though properly preserved, do not affect substantial rights; but it does not require the court to decide on the whole record whether exception was taken or not, or overlook defects due to negligence or inattention. Storgard v. France & Canada S. S. Cor. (C. C. A.) 263 F. 545; Haywood v. U. S. (C. C. A.) 268 F. 795; Rich v. U. S. (C. C. A.) 271 F. 566; Standard Oil v. Allen, 50 App. D. C. 87, 267 F. 645."

Even if we were not precluded, for the reason that has been stated, from considering the sufficiency of the evidence to sustain the verdict, we should have no difficulty in disposing of the contention of the plaintiff in error in that regard.

[4] What has been said applies as well to the objection urged in the plaintiff in error's sixth assignment of error. The instruction there referred to was not objected to, nor was any request made to the trial court for any other or further instruction upon that subject-matter. See Dimock v. United States, 293 F. 839, 54 App. D. C. 20; United States v. Bok (D. C.) 293 F. 433; Roth v. United States (C. C. A.) 294 F. 475; Landwirth v. United States (C. C. A.) 299 F. 281; Ader v. United States (C. C. A.) 284 F. 13; Mangum v. United States (C. C. A.) 289 F. 213.

[5] To the instructions of the court forming the basis of the seventh and tenth assignments of error, certain objections were taken by the plaintiff in error. Regarding the latter, the instruction of the court, in speaking of the sixth count of the indictment, was as follows:

"The primary question there is, again, whether or not, if the defendant had had no personal or self interest in that transaction with Mr. Nichols, would he, acting for the bank, have loaned Mr. Nichols $1,100 upon an unsecured note, or was he actuated in this transaction by his self-interest in it, by the fact that he was to get the $1,100 from the bank? You have a right to scrutinize a transaction of that kind carefully, because the cashier was lending to a third person $1,100, which, in turn, the third person was turning over to him, the cashier. If you find that in good faith the defendant here believed that it was a good loan for the bank, that it was a reasonably good loan, that Mr. Nichols was entitled to this credit, then you should not charge him with criminality in connection with it. But if, upon the other hand, you think that the defendant here realized that Mr. Nichols was not a good credit for the bank for that amount, but that he, the defendant, was induced to enter into the transaction on behalf of the bank, because he, the defendant, was getting the money, then you may consider that as bearing upon the general question as to whether he had the essential indispensable intent to injure or defraud the bank."

And the objection made by counsel to that instruction was as follows:

"May we have an exception to that portion of the court's instructions regarding the Nichols loan, that a test or standard to be applied by the jury was whether or not, if Mr. Deupree had not himself desired the money, he would have loaned Mr. Nichols $1,100, on the ground that in our opinion it is not the proper test under the statute for misapplication, but that the test stated by the court applies rather to maladministration than to misapplication.

"The Court: Very well."

In his argument in support of that objection, counsel for the plaintiff in error contends that the question of his criminality in that regard depends, not upon whether he would have made the loan, if he had not been interested in getting the money, but whether he at the time knew it was an improvident loan, and had reason to believe that it would or might result in loss or injury to the bank.

Even in the latter aspect, the evidence at least tended to show that the plaintiff in error must or should have had that knowledge, for it shows that Nichols was the bank's janitor, an old man, who slept in a room in the basement of the bank, and had so little property that later he sold all of it for $1,500, and that, when the plaintiff in error asked him to sign the note, saying that he could not borrow from the bank himself, and that he could not let Nichols have it unless Mr. Deschodes (one of the bank's directors) consented, Nichols replied that he would accommodate him if it wouldn't cost him anything. There is no pretense that Mr. Deschodes was given any informa-

tion regarding the transaction. We think there is no merit whatever in the objection to the instruction.

[6] The other instruction of the court to which objection was made was as follows:

"There is some evidence to the effect that right recently, I think during this month, just before the trial of the case here, a few days at least before the trial of the case, the defendant has paid something like $800, and has sent a note signed by himself, and perhaps his brother and others, to the bank, covering what he admits to be due to the bank from him. Payment at this late day, gentlemen, after indictment and just before trial, you cannot consider as of great, if any, weight, bearing upon the intent which the defendant had at the time that these transactions took place. You may give to his conduct now such weight as you think it is entitled, but you will bear in mind that the payment and giving of the note, such as it was, come at the time that they do come, and you may consider whether or not they are any evidence of good faith, or whether or not they are merely for the purpose of escaping the consequences of his wrongful conduct, if you find that it was wrongful."

To which instruction this exception was taken:

"Mr. Peterson: If the court please, we ask an exception to the court's instruction upon the question of the weight to be given the payment by the defendant of the amounts of $800 in cash, and other payment by note, and particularly to the court's statement that no great weight should be given to his paying the cash and note, as I understood the court's instruction, on the ground that the comment upon the evidence would not be justified."

That exception, we think, equally without merit.

[7] Lastly, the plaintiff in error contends that the trial court erred in allowing the following questions put to and answers given by the plaintiff in error to be introduced in evidence:

"Q. At the time you left Dubois, or just prior to the time you left Dubois, you issued a draft payable to the American Express Company. What did you do with that money, Mr. Deupree? A. That went into travelers' checks.

"Q. And what did you do with those travelers' checks? A. They were cashed.

"Q. Did you send any of these to Mrs. Harn?

"Mr. Peterson: Objected to as incompetent.

"The Court: Sustained.

"By Mr. Davis: Q. Now, Mr. Duepree, as a matter of fact, Mrs. Harn joined you in Los Angeles shortly after your arrived there, did she not?

"Mr. Peterson: I object to this as incompetent, irrelevant, and immaterial, and very prejudicial.

"Mr. Davis: I think, if your honor please, we have a right to go into this, because it shows the motive with which this transaction was put through the bank.

"Mr. Peterson: It has nothing to do with motive at all.

"Mr. Davis: It shows intent and purpose on the part of this man.

"The Court: Overruled.

"Mr. Davis: You may answer the question. Q. Didn't Mrs. Harn join you in Los Angeles shortly after you got there? A. She came to Los Angeles about two or three weeks afterwards.

"Q. And you went to living together at one of the rooming houses there, did you not? A. We did not.

"Mr. Peterson: I object to that.

"By Mr. Davis: Q. You lived at the same rooming house, did you not?

"Mr. Peterson: The court has sustained an objection to that.

"Mr. Davis: The other question.

"Mr. Peterson: The same one.

"The Court: Do you object to this?

"Mr. Peterson: Yes, your honor.

"The Court: Overruled.

"By Mr. Davis: Q. You were living in the same rooming house, were you not? A. We were."

It is, we think, perfectly obvious that that testimony had a direct bearing upon the true intent with which the plaintiff in error disposed of the moneys of the bank, of which he was the trusted cashier.

The judgment is affirmed.