## FEATHER RIVER LUMBER CO. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
February 4, 1929.

No. 5519.

L. H. Hughes, of Quincy, Cal., and C. E. McLaughlin and McLaughlin & McLaughlin, all of Sacramento, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., of San Francisco, Cal., and Albert E. Sheets, Asst. U. S. Atty., of Sacramento, Cal. (H. P. Dechant, Asst. Sol., Department of Agriculture, of San Francisco, Cal., of counsel), for the United States.

Before GILBERT and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

GILBERT, Circuit Judge. The United States brought an action alleging that the defendant carelessly and negligently set and caused to be set a certain fire, which fire it

carelessly and negligently allowed to spread upon certain described public lands, to the damage of the plaintiff in the sum of $187,-275.58 and the cost of extinguishing the fire, amounting to $2,053.51. The defendant answered placing at issue the material allegation of the complaint. A jury trial having been waived by the written agreement of the parties, the case was tried to the court. At the conclusion of the testimony both parties asked for special findings, but none were made. The court, having found for the plaintiff, caused a judgment to be entered against the defendant for damages in the sum of $41,575.80 and the costs of the action.

■ The defendant assigns as error the denial of its motion for dismissal and nonsuit at the close of the government's case, made on the ground that the evidence adduced was insufficient to sustain a finding in favor of the plaintiff. The denial of that motion cannot avail the defendant as ground for reversing the judgment. After it was denied the defendant proceeded to introduce its testimony, and at the close of the trial it made no motion for judgment on the ground of the insufficiency of the evidence to sustain the complaint. The rule that under the circumstances here presented the evidence cannot be reviewed by an appellate court has been so frequently applied by this and other courts as to render unnecessary a review of the authorities. Deupree v. United States (C. C. A.) 2 F.(2d) 44, 45; Clark v. United States (C. C. A.) 245 F. 112; Fleischmann Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. A general finding having been made by the court below, the review in this court is limited to the rulings of the trial court in the progress of the trial. Dunsmuir v. Scott (C. C. A.) 217 F. 200; New York Life Ins. Co. v. Dunlevy (C. C. A.) 214 F. 1; Pabst Brewing Co. v. Horst Co. (C. C. A.) 264 F. 909. The record shows that both parties made oral requests for special findings, but such a request without specifying the findings desired does not serve to bring to the court's attention any question of law. In view, however, of the fact that the parties and the court below regarded the requests as preserving a right to review the evidence on appeal, we have given careful consideration to the testimony, and we are of the opinion that it was sufficient to sustain the allegations of the complaint.

■ Error is assigned to the admission in evidence of two maps made by the witness Evans and referred to in his testimony concerning his examination of the land covered by the fire, to determine the extent of the damage caused thereby. The objection was that the maps were incompetent. One of them covered the particular premises on which the fire originated. The other, a larger map, covered the whole area of the timber destroyed or injured by the fire. We think that the objection was properly overruled. Evans was in charge of timber surveys and had been in the Forestry Service for some 15 years. He described in detail the method by which he investigated the damage to the land included in the larger map. He stated that he started from an ascertained quarter section corner, and thence ran lines due north and south; the lines being 2½ chains apart. The defendant urges that the maps were useless for the purpose of proving damages, and directs attention to the fact that, according to the testimony of Evans, four strips were run across each 40-acre tract, and on each tract a plat containing one-tenth of an acre was selected on which to count the trees that had been growing thereon, and that the maps do not show the location of those plats, or whether the one-tenth acre represented a fair average of the timber on the 40 acres. It was obviously impracticable for the government to count every tree that had been destroyed on 4,000 acres of land. The method followed was similar to that by which timber is ordinarily cruised, and there was no attempt to show that as a matter of fact Evans' testimony as to the extent of the damages was unfair or was unsupported by the facts. The maps which he made were in the nature of memoranda from which he testified, and they were undoubtedly competent for that purpose.

■ The argument on the assignment of error goes farther than the objection to the maps as incompetent, and attacks the testimony which Evans gave in connection therewith as so "conjectural, remote, and uncertain" that it should have been excluded. That, we think, is not sustainable. Under the circumstances, Evans' method seems to have been scientific and reasonable. He took four sample plots in each 40-acre subdivision, and estimated the destroyed merchantable timber and the growing timber not damaged or killed and the cost of replanting the area where young growth was killed and where there were less than three living seed trees per acre, applying the average cost of planting over a period of years in the forests of that region. We are not convinced that any improper elements entered into the estimates of the witness, or that they should have been excluded as "conjectural, remote, or uncer-

644

tain." Here there was destruction of merchantable timber, as well as destruction of young growth. The latter, while it had no market value, had a value to its owner. As to the merchantable timber, the measure of damages was the value of the trees, and that measure was applied by the witness by proof of local stumpage prices. Corvallis & Eastern Railroad Co. v. United States (C. C. A.) 191 F. 310. As to the young growth, while the measure of damages in such a case is ordinarily the difference in the value of the land before and after the fire, here, there being no law to authorize the sale of the lands injured by the fire, the trial court admitted such evidence as was available to show the damage actually sustained, that is to say, what was required to make the government whole, and this, we think, might properly include the cost of restoring the land to the condition in which it was before the fire. The truth of the estimate of such expense as adduced in the court below was not questioned or disputed. Its competency only was challenged. The defendant cites Watkins v. Mountain Home Irr. Co., 33 Idaho, 623, 197 P. 247, where it was held that the measure of damages for the destruction of growing trees cannot be based solely on the cost of their production to the time of their loss. But in the case at bar the proof adduced was the cost of the restoration of the land to the condition in which it was before the destruction of the growing trees thereon. It would not have sufficed to show the market value of those growing trees, for they had no value. In 8 R. C. L. p. 488, it was said: "The fact that property has no market value does not restrict the recovery to normal damages only, but its value or the plaintiff's damages must be ascertained in some other rational way and from such elements as are obtainable." United Verde Copper Co. v. Jordan (C. C. A.) 14 F.(2d) 299, 302; Doak v. Mammoth Copper Mining Co. (C. C.) 192 F. 748.

■ Nor do we think that Evans' report should have been excluded. The report was a detail of the measurements of the damaged timber and a calculation of the extent of the damage, and it was presented for the purpose of showing those details in connection with the testimony of the witness. In McCaskill Co. v. United States, 216 U. S. 504, 516, 30 S. Ct. 386, 392 (54 L. Ed. 590), the court, referring to the competency of a report made to the Land Office, said: "This seems more to have been done for a connected statement of the facts than for proof of them. The facts were testified to by Paul. We cannot see that there was prejudicial error in the ruling of the court." Conceding it to be true, as urged by the defendant, that no one could predict what might happen to the growing timber, that another fire might have swept over it at the same time, or shortly after, or the next year, or before it attained its full growth, it is nevertheless not believed that the measure of damages adopted was for that reason erroneous, or that it is to be held that the damages sustained by loss of property destroyed by a fire is to be diminished by the fact that it might have been otherwise destroyed.

■ Exception on the ground that they did not represent present conditions was taken to the admission of two photographs of the burnt premises and one moving picture thereof, taken more than three years after the fire. Witnesses familiar with the premises before and after the fire testified that the views so taken represented the scene practically the same as at the time of the fire, with the exception that the ground had been burned over and the timber had been destroyed. Such being the case, we cannot see that it was error to admit the photographs, nor in any view of the question of their admissibility does it seem to us that they could have been prejudicial to the defendant.

■ It is contended that it was error to permit the witness Morehead to answer the question: "With what degree of accuracy are you able to determine the location of a fire from Mt. Elwell, a distance of approximately 15 miles, and how accurately will you be able to tell the location of the fire in feet?" The objection was that the evidence was incompetent. For three years Morehead had been a Forest Service Lookout, engaged in spotting and locating fires in the national forests, and he was familiar with the topography of that portion of the country. He had described his method of locating fires by the use of his instruments and observations at his lookout point. He testified that he could tell its location within 50 or 100 feet. There was no evidence that he was not capable of doing this with accuracy, or that his instruments were untrustworthy. We find no merit in the assignment.

The judgment is affirmed.