MARVIL PACKAGE COMPANY *v.* JACOB GINTHER.
[No. 65, October Term, 1927.]

*Decided January 11th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*L. Paul Ewell* and *F. Leonard Wailes,* with whom were *Wailes & Robins* on the brief, for the appellant.

*John S. Whaley* and *L. Claude Bailey,* with whom were *John W. Stalon* and *Miles, Bailey & Miles* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a suit in trespass *q. c. f.* in which the appellee was plaintiff and the appellant defendant. It grew out of a dispute as to the northern line of the property claimed by plaintiff. The alleged trespass was the cutting of certain trees on property claimed by plaintiff as a part of a farm owned by him known as the "Milbourn Farm." Defendant admitted the cutting of the trees, and their value was agreed upon, but defendant denied that said trees were within plaintiff's lines. On petition of plaintiff the trial court ordered a warrant of resurvey to issue. This appeal is from a judgment entered on a verdict in favor of plaintiff. There are forty-two bills of exception, all of which are to rulings on evidence, except the last, which was to the ruling on the prayers.

The most important exception is the thirty-first, and the question embraced therein arose as follows:

To prove the true boundaries of the Milbourn Farm, defendant offered its "Exhibit 14," a certified extract from the return of the commissioners to divide the real estate of Roland Bevans, in a proceeding in the Circuit Court for Worcester County, in which the Milbourn Farm was laid off and described by courses and distances. This proceeding was in the year 1850. Plaintiff objected to all parts of the return of said commissioners "which refers to the Milbourn Farm," and the objection was sustained.

To understand the importance of that evidence in this case, it is necessary to review the history of this farm and of that known as "The Old Bevans Place," which was also a part of the property of Roland Bevans included in said return, but not described by courses and distances. According to said return the Milbourn Farm contained 195¼ acres and the Old Bevans Place (composed of two tracts called "Warwick" and "Milton" or "Mitten") contained two hundred acres. Both of these farms came into the possession of Elizabeth S. Townsend, and were devised in her will by their respective names to her sons Irving S. Townsend and John Glenn Townsend, respectively, with certain contingent remainders which need not be considered here.

In January, 1906, Irving S. Townsend entered into a written contract of sale of the Milbourn Farm with Peter Ginther, brother of plaintiff, which was sought to be specifically enforce by Irving's executor, Thomas P. Townsend. That case came to this court on appeal, and is reported in 114 Md. 122. It was there held that Ginther could not be compelled to take the property, because the Milbourn Farm as surveyed by Levin H. Hall did not contain all that Irving S. Townsend thought and represented it to contain. And the shortage appears to have been exactly the strip of land now in controversy, on which the alleged trespass occurred. Subsequently, in 1913, three years after that case was decided, the surveyor Hall, at the request, he says, of Mr. Myers, made another survey in which he included the missing strip, but he did not do this by the lines of any deed or previous grant. His testimony as to how he accomplished it is as follows:

"Well, I was asked by Mr. George Myers to go and make the survey. I told him I would go, asked him where the papers were, and he said he did not have any. I went up there in March, somewhere near the middle, 1913." Those present, he said, were, "James Tull, James Carter, Isaac Webb and James Burke, or Byrd, and I remember outside a man with us by the name of Sam Moore. These were the ones that pointed out the line." "And the circumstances, I asked them what they wanted me to do, and they told me that they wanted me to survey this certain piece of land, and I asked them for the papers and they said they did not have any; but they did show it to me one of these men, I don't know which one. They would go ahead and put the stake down for me to survey by and we did this until we inclosed the pieces of land," etc. In other words, the surveyor simply put the lines where he was told to. He does not know even which one of the men pointed out the line, nor how he was able to do so. It may well be that he or they had heard Irving S. Townsend say that was his boundary. But we have the surveyor, Hall, testifying in the case referred to, that the survey in that case was made from papers furnished him by the same Mr. Townsend, and that he told him the

farm should contain about 195 acres, and that after that survey was made "Mr. Townsend said he thought it was correct; that he did not know the lines positively, but thought the farm was of a larger circumference." So if these men who pointed out the northerly line, by which the later survey was made, got their information from Mr. Townsend, they were giving information which Mr. Townsend himself admitted was probably incorrect in view of the result of the survey made by Hall in that case. Townsend apparently was not claiming anything outside the lines shown by the title papers which he furnished Hall. He was simply mistaken as to how far his line really extended under those papers.

However that may be, the Milbourn Farm was conveyed to Peter Ginther in 1913 by the widow and executor of Irving S. Townsend according to this later made-to-order survey of Hall, and was devised by Peter Ginther, who died in 1925, to his brother, Jacob Ginther, plaintiff in the present case.

The old Bevans place was conveyed by John Glenn Townsend and wife to the defendant on February 4th, 1921. The deed purported to convey 200 acres of land, more or less. And defendant contends that the deed included the parcel of land here in controversy.

The title papers excluded by the ruling in this exception contained the only complete description by courses and distances of the "Milbourn Farm," and therein lies its importance, especially when it is recalled that the decision in *Ginther v. Townsend, supra,* was based on the survey made from these papers at the instance of Irving S. Townsend, who acknowledged this survey to be correct. It does not appear from the record why this evidence was excluded, but it is contended by appellee that it was properly excluded because, he says:

(a) The chain of· title (other than said proceedings) of what the defendant claims as the Milbourn farm, was not in its list of title papers filed with the surveyor, and the defendant does not attempt to show that the land referred to in said return as the Milbourn Farm was ever acquired by Elizabeh Townsend as such.

(b) There was no location, on the plat filed with the surveyor's return, of that part of the return of the commissioners which refers to the Milbourn Farm, and the defendant did not counter-locate said farm on the plat.

As to the first reason assigned, those proceedings were listed with the surveyor and they themselves show that Teagle Townsend, the husband of Elizabeth, elected to take in right of his wife, who was the oldest child, and therefore had the right of election, all the property including the Milbourn Farm, and deeds from him to John E. LeCompte, and from LeCompte to Elizabeth Townsend conveying said property, were offered and admitted in evidence without objection before the offer of the return of the commissioners.

As to the second reason, since the Act of 1852, chapter 177 (Code, art. 75, sec. 90), a location may be controverted without any counter-location. *2 Poe, Pl. & Pr.,* sec. 477.

Besides, it is perfectly apparent from a comparison of the plat returned by the surveyor with the plat in the said proceedings that there was in fact a counter-location. This was omitted from the surveyor's explanations, but there does not appear in the record any other source of the dotted line on his plat, which represents the northern boundary of Milbourn Farm according to the defendant's claim, than the plat of said farm in said proceedings.

Again, it is more than questionable whether the plat returned by the surveyor could have been used for any purpose except for illustration. The testimony taken by him was not returned in writing nor does it appear that the witnesses testified under oath. And there is no reference in his return to any location made at the instance of the defendant, although it appears from the stipulation of counsel that certain lines on the plat represent defendant's pretensions. For requisites of a valid execution and return of a warrant of re-survey, see 2 *Poe, Pl. & Pr.,* secs. 474, 476.

Where plats are authorized for illustration, the strict rules of practice where defence is taken on warrant do not apply. *New York, P. & N. R. Co. v. Jones,* 94 Md., at p. 33. Our conclusion is that there was reversible error in the ruling on the thirty-first exception.

It is impracticable and unnecessary to consider at length the numerous exceptions in this case.

If the plat was to be used for illustration only, there was no objection to permitting the surveyor, Pitts, to testify that the lines of plaintiff's pretensions were protracted to conform to those in the plat accompanying the deed to Peter Ginther. This ruling was the subject of the first exception.

In the second, third, fourth, fifth, and sixth bills of exceptions, Jacob Ginther was permitted to testify as to statements made by one Filmore Evans, who formerly owned adjoining property, in regard to a stone at a line he said was a northern boundary of Milbourn farm. This stone, he said, was also a boundary stone between the Dryden property and the Evans property. It does not appear how Evans got this information or that he was testifying as to general reputation. Testimony of neighbors as to reputation in regard to boundaries may be received when no better evidence is obtainable (*Medley v. Williams,* 7 G. & J. 67), or as to actual knowledge by them of the authorized placing of boundary stones, etc. But this sort of testimony should be carefully guarded; and the mere statement of a neighbor that a given line or stone is a boundary should not be admitted without some satisfactory explanation of the source of his information. The objection to these questions should have been sustained.

On the seventh exception the objection was to permitting Levin H. Hall, surveyor, to answer the question, "How does the northerly line on Mr. Pitts' plat correspond with the northerly line that you ran on the plat with the Peter Ginther deed?" This refers to a survey made by Hall in 1913, to which reference has already been made. Certainly a line run in that survey could not be taken as evidential of the proper line for the Pitts' plat. The objection should have been sustained.

The eighth, ninth, tenth, eleventh, twelfth, and thirteenth exceptions were properly taken to erroneous rulings in permitting Wm. M. Schoolfield to testify as to what certain persons told him in reference to the north line of the Milbourn Farm while he was surveying the Evans farm in 1901.

There is nothing to show on what these persons based their opinion.

There was no prejudicial error in the ruling on the fourteenth exception; nor in the seventeenth. The testimony sought to be adduced by the question in the seventeenth was admissible, but the question was so involved that we cannot say there was error in sustaining the objection to it. The rulings on the fifteenth and sixteenth were wrong. The testimony excluded was proper on cross-examination. The rulings in the eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth exceptions were erroneous. In the first three, the witness T. W. Burke was permitted to testify as to boundaries without giving any satisfactory source of information. He said his uncle, James Burke, who was dead, had owned adjoining property, and pointed out the line between his place and the Milbourn land and the Drydon land. But he does not say when this was or what was the source of his uncle's information. It might be assumed he would know his own line, but it cannot be assumed he would know the division line between properties in which he was not interested. The witness further testified that seven years before the trial he lived on the Milbourn Farm for two years. But this was after it was conveyed to the plaintiff and after the dispute arose as to the line. The witness does not mention any one other than his uncle who told him about the lines.

In the twenty-first, twenty-second, twenty-third, and twenty-fourth the witness, James Tull, was induced by many leading questions to intimate that he had some idea of what the Milbourn line was. At any rate he gives no source of information. He lived on the Milbourn Farm about forty-five years ago in the lifetime of Miss Elizabeth S. Townsend, but she never told him anything about the lines.

There was no reversible error in the ruling on the twenty-fifth exception. We find no error in the rulings on the twenty-sixth and twenty-seventh exceptions. We will discuss the testimony in these exceptions later in connection with the twenty-ninth exception.

The subject of the twenty-eighth exception is the admission of the plat for the purpose of establishing plaintiff's pretensions as shown therein. The admission of this plat in evidence was error. For reasons hereinbefore discussed, the plat could only be used for purposes of illustration.

The twenty-ninth exception was to the admission in evidence of the deed from the executor and the widow of Irving S. Townsend to Peter Ginther, conveying all the right, title, interest, and estate of Irving S. Townsend and of his widow in and to the Milbourn Farm, which is described by metes and bounds, courses and distances, as in the Hall survey of 1913, and includes the *locus in quo*. The objection is on the theory that there is no evidence to show that Irving S. Townsend owned the *locus in quo* and therefore the deed was not proper evidence. That objection would be well taken if there were an entire lack of evidence of such ownership. But the witness Seth Butler testified that Teagle Townsend told him that the Dryden and the Evans lands were just north of the northerly line of the Milbourn farm, and the *locus in quo* is south of that line. There is therefore *some* evidence of ownership by Irving S. Townsend, however slight it may be. We find no error in admitting the deed.

At the close of plaintiff's testimony the defendant offered two demurrer prayers which were refused, and this ruling constituted the thirtieth exception. This exception, however, defendant waived by proceeding to offer testimony on his own behalf.

The rulings in the thirty-second, thirty-third, and thirty-fourth exceptions were erroneous. The surveyor, Levin H. Hall, testifying as a witness for defendant, said that he made the plat attached to the deed to Peter Ginther from the executor and widow of Irving S. Townsend, offered in evidence by plaintiff, and that he made the survey from which the plat was made; that he got all his information for the survey below the dotted line from his field book of a former survey made in 1907. Irving S. Townsend and Peter Ginther were with him when he made the 1907 survey. It appears to be the one spoken of in *Ginther v. Townsend, supra*. The wit-

nesses testified that this survey of 1907 was of the part south of the dotted line in the plat of 1913. "I ran that line back to Bevans Gut, and I found it agreed all right with the distance and all right with the courses and Mr. Townsend and Mr. Ginther said it was no use to proceed any further and I stopped the survey. That is the line that I first made for the Milbourn Farm."

The question ruled out in the thirty-second exception is:

Where did you get your papers for what you call the Milbourn tract?

The witness was then asked how he made the survey of that part of the land on the plat north of the dotted line, and replied that he made it as pointed out to him by men who claimed that they knew that was a part of the Milbourn Farm. He was then asked if he had a paper for that, and answered, No.

The questions ruled out in the thirty-third and thirty-fourth exceptions were:

Did you have any paper for the survey of the land south of the dotted line?

Have you the plat of the part of the land which you surveyed in 1907?

The purpose of the questions in the three exceptions was to show that this surveyor had in 1907 surveyed the Milbourn Farm, when it was sold by Irving S. Townsend to Peter Ginther, according to papers furnished him by Townsend, and found only the part south of the dotted line on the plat of 1913 offered by the plaintiff; and to have the surveyor produce the 1907 plat.

This was perfectly competent testimony. Defendant was entitled to show how the 1913 plat, accompanying the deed offered by plaintiff, was made; and that it did not represent the surveyor's own findings, in so far as it differed from the 1907 plat made by him.

There was no error in the rulings in the thirty-fifth, thirty-sixth, and thirty-seventh exceptions, as the questions there asked had already been answered.

The rulings in the thirty-eighth and thirty-ninth exceptions were erroneous.

Thomas P. Townsend, a son of Elizabeth S. Townsend and brother of Irving and John, testified that he had been on the tracts of land in question frequently, had known them all his life and that the "Old Bevans Place" was devised by his mother to John. The questions to which objections were sustained in the thirty-eighth and thirty-ninth exceptions were:

"Can you state of your own knowledge whether that was the same tract as acquired by her or whether she took any part from that tract?"

"It has been rumored and claimed by a certain Jacob Ginther that, after she acquired the 'Old Bevans Place,' she took a part thereof and annexed it to the Milbourn tract and thereafter called it a part of the Milbourn tract. Do you know whether this is true?" The witness should have been permitted to answer these questions. They were relevant, and not excluded by the rule that a witness not on the survey cannot testify as to objects located on the plat, even if that rule were applicable to the present survey; and we have indicated that, in our opinion, it is not.

In the fortieth exception the same witness was asked:

When you signed this deed did you raise any objection as to the land described therein?

The deed referred to was the one to Peter Ginther, signed by witness as executor of Irving S. Townsend.

There was no error in sustaining an objection to this question, as there does not appear to have been any attempt to attack the good faith of the witness.

There was no error in the ruling on the forty-first exception.

The witness was asked to testify as to his *understanding* and not to his *knowledge* of a fact.

The forty-second exception was to the granting of plaintiff's three prayers and the refusal of defendant's first, second and third prayers.

Special exceptions were filed by defendant to plaintiff's first and second prayers on the ground of want of evidence to support them. A prayer similar to plaintiff's first prayer was approved in *Peter v. Tilghman,* 111 Md. 227.

It instructed the jury, in effect, that if it find from the evidence that the defendant broke and entered the lands of the plaintiff at the place or places located on the plat marked "Alleged Trespass" prior to the institution of the suit, and cut and carried away trees from said land, plaintiff is entitled to recover the value of the trees. There would have been less danger of misleading the jury, in the circumstances of this case, where the cutting of the trees is admitted, if the prayer had more plainly required the jury to find that the place where the trees were cut was on plaintiff's land. In its present form it comes pretty near to assuming the ownership of the *locus in quo.* The special exception, however, was not on that ground. It was on the ground that there was no evidence that the plaintiff was the owner of the land on which the trespass took place. We have said in considering the twenty-ninth exception there was some evidence, although it does not appear to be much more than a scintilla. We, therefore, find no reversible error in granting this prayer.

Plaintiff's second prayer instructed the jury that, in ascertaining the true northern line of the Milbourn Farm, they might consider what was the general understanding and reputation as to the location thereof among the owners, neighbors, and others who have been tenants or employees on said land, and adjoining lands.

The special exception to this prayer should have been sustained. There is no evidence of general understanding or reputation. Plaintiff's third prayer is the ordinary measure of damages prayer in such cases. Defendant's three rejected prayers are all demurrer prayers and, for reasons already stated, there was no error in refusing them.

*Judgment reversed and case remanded for a new trial, with costs to appellant.*