**CRONK et al. v. UNITED STATES.**

No. 4949.

Circuit Court of Appeals, Third Circuit.
March 1, 1933.

Jacob S. Karkus, of Perth Amboy, N. J., for appellant Foosaner.

Ernest S. Glickman, of Trenton, N. J., for appellant Cronk.

Harlan Besson, U. S. Atty., of Hoboken, N. J., and John W. Griggs, Asst. U. S. Atty., of Paterson, N. J.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

This case might be affirmed on the ground that the record fails to show timely exceptions and properly supported assignments of error. In view, however, of the earnest argument of counsel and the fact that substantial imprisonments are involved, we dispose of it on the merits.

The indictments on which both defendants

were found guilty, judgment of sentence pronounced, and from which they have appealed, charged them with conspiracy to violate the Bankruptcy Law. From the proofs it appears that on March 5, 1928, an involuntary petition in bankruptcy was filed in the court below against James Cronk, trading as the Quality Paint Shop, at Asbury Park, N. J. Thereafter he was adjudged bankrupt and a trustee was chosen and duly qualified. No assets were found and no schedules filed. The proofs showed that a quantity of paint, taken from the Quality Paint Shop shortly before it was closed, was found on the premises of Milton Foosaner's father in Plainfield, N. J. This paint was subsequently sold to James J. Nash, but the money which was received by the defendant Foosaner was never paid to the trustee. The latter brought proceedings before the referee in bankruptcy to recover this paint, but, failing to make sufficient proof, the proceeding was dismissed.

To connect Foosaner with Cronk it was shown that while the lease of the premises was in Cronk's name, both defendants joined in negotiating it and the lessor testified: "At the beginning they both looked at the store and both seemed interested, one as much as the other." As to the occupancy of the store, he testified: "Mr. Cronk was there all the time and Mr. Foosaner was around in and out." Just before the bankruptcy the store was found empty and Cronk disappeared. An expressman testified on behalf of the government that he had been hired by the defendant Foosaner to remove a load of paint from the store to a house at Freehold, N. J., where Foosaner met the paint. He further testified he took a second load to a garage at Plainfield, N. J., where he was met by the defendant Foosaner. Later he took a third load from the store, both Cronk and Foosaner being there at the time, to a garage at Freehold. He was stopped on the road, at Metuchen, by Foosaner, who there turned the load back from the destination given, which had been Plainfield, and told him to go to Freehold. The load reached the latter place, where it was unloaded late at night at the rear platform of a garage. The witness testified that on a Saturday night later he took a load of paint, brushes, paper, etc., from the store, kept it in front of his house over night, and delivered it on Sunday to the defendant Foosaner at the garage at Plainfield; this being the load which Foosaner had helped him load at the store. At Plainfield Foosaner met him and the load was delivered to Nash at an address Foosaner gave the witness. Foosaner paid the haulage charges and gave the witness the tables and chairs left in the store. Nash testified he bought the paint from Foosaner, the defendant, and for it paid him some $750.

From the above and other testimony that might be cited we think the jury had evidence from which it might fairly find that the two defendants conspired to do away with the paint and supplies that formed part of the bankrupt estate. Such conspiracy being shown, did the court err in admitting the testimony of Hurley, a government investigator, who arrested Cronk at Fitchburg, Mass.? When accosted, Cronk denied his name was Cronk, but later admitted it was, and, when asked how he got into this affair, the witness testified "he expressed himself very bitterly and said the Foosaners got him into the tangle." Whether competent or not, no objection was made to admission of his testimony, no exception was taken, and no request made for direction to the jury to disregard Cronk's statement.

Objection was made to the testimony of the witness that Cronk was engaged in business in Fitchburg and not under his own name. Manifestly, such testimony did not affect Foosaner, and his objection to it is without merit.

It is contended that because the trustee failed in an effort, before the referee, to reclaim the removed paint from the defendant Foosaner and his father, the government could not successfully prosecute Foosaner and Cronk for conspiracy to violate the bankruptcy law. If such be the law, then the success of a bankrupt in preventing a recovery of his goods would defeat the purpose of the law, namely, to apply the bankrupt's property to his creditors' debts. It is clear that in many cases where there is a conspiracy to do away with a bankrupt's goods, a trustee may be unable to furnish proof warranting a recovery of them. The attempted recovery of the paint and the proceeding before the referee was a matter that concerned the creditors, acting by their trustee, and the Foosaners and Nash. The government was not concerned in the question of the return of the paints and was not concluded by the proceeding before the referee when it later indicted one of the Foosaners and Cronk for conspiring to violate the Bankruptcy Law by disposing of the bankrupt's property. An innocent purchaser from a bankrupt may in a proper case hold the goods, but at the same time the bankrupt and

his accomplices may be guilty of conspiring to unlawfully sell them and do away with the proceeds.

Finding no error in the case, the judgments below are affirmed.