## BENETTI v. UNITED STATES.

### No. 8549.

Circuit Court of Appeals, Ninth Circuit.

May 26, 1938.

Platt & Sinai, of Reno, Nev., for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key, William H. Boyd, M. Leo Looney, Jr., and Earl C. Crouter, Sp. Assts. to Atty. Gen., E. P. Carville, U. S. Atty., of Reno, Nev., and Thomas O. Craven, of Carson City, Nev.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant was indicted on three counts for unlawfully, wilfully, knowingly and feloniously attempting to defeat and evade a large part of the tax due upon his net income for each of the calendar years 1929, 1930 and 1931, in violation of Section 146 of the Revenue Act of 1928, 45 Stat. 791, 835 [26 U.S.C.A. § 145].

The evidence shows that sometime in the summer of 1933, two agents of the Treasury Department were assigned to investigate and verify the appellant's income tax returns in order to determine his true income tax liability. The agents had reliable information that appellant was engaged in the illicit manufacture and sale of liquor and had made large sums of money therefrom. To determine if this information was correct and with the purpose of determining appellant's income, the agents made examination of all available records. ·They also investigated his bank accounts and the county records to check mortgages appearing in the name of appellant. Among the records examined was a copy of an indictment for a violation of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., together with an inventory of liquor which had been seized by the Government. After these preliminary investigations, the agents visited the appellant at his home in Sparks, Nevada, and told him that they were there to examine him in relation to his tax returns and made request for information to assist them in determining his true income.

Appellant expressed a willingness to cooperate; he told the agents that he had kept some records, but that after he had made out his income tax returns through Deputy Revenue Collector Cooper, these records had been destroyed because he thought it was not necessary to retain them.

Both appellant and his wife made statements under oath before the revenue agents. After they were sworn and before they answered any questions, the revenue agent made the following statement to appellant:

"At this time, Mr. Benetti, it becomes my duty to advise you that under the Constitution you are not required to incriminate yourself, and to inform you that anything you say or documents you produce at this hearing can be used against you in any proceeding which may hereafter be undertaken by the Government. Do you fully understand?"

Mr. Benetti answered: "Yes."

Further, the Revenue Agent stated: "It is the understanding that your answers to the questions propounded to you will be entirely voluntarily, is that correct?"

Mr. Benetti again answered: "Yes."

In the course of this examination appellant admitted that he had been unlawfully engaged in the manufacture and sale of liquor from which he had made large profits. To reduce his income tax thereon he furnished statements of his expenses in connection with that business and of his sales. In the course of his deposition he also stated that his "still" had been seized by the Government, together with a considerable quantity of liquor. At the end of the deposition and just above his signature where appellant subscribed to the oath appears the following: "I have carefully read the foregoing transcript of my testimony, pages one to thirty three inclusive, and state that it is a true and correct transcript and that the answers to the questions propounded therein are free and voluntary on my part."

The government agents testified that from the various sources of information they found that for the calendar year 1929, appellant had an unreported net income of $88,202.28; for the calendar year 1930, an unreported net income of $41,596.88; for the calendar year 1931, an unreported net income of $21,542.91, and that no tax had ever been paid on any of these amounts.

In addition to his admission that he had failed to report his true income in his returns for the years in question, he filed a protest to the report of the agents in which he admitted income far greater than he had reported.

At the trial appellant took the stand on his own behalf and when asked to explain this great difference between the net income he had reported, and the net income he actually had earned, he testified that in making out his income tax returns for the years in question, he had been assisted by Mr. E. J. Cooper, a Deputy Collector of Internal Revenue, who had advised appellant that he need not make any return on the income derived from an unlawful business.

The jury returned a verdict of guilty as charged on all of the counts, judgment and sentence were pronounced by the court, from which this appeal.

Although most of the argument on the appeal is devoted to the discussion of the legal implications and effect of an alleged unlawful search and seizure which occurred in connection with a violation of the National Prohibition Act by appellant, no evidence of any proceedings in that matter was offered in evidence, and none appears in the record. There is nothing here but the mere statements of counsel.

In this connection appellant assigns error based upon the failure of the court to instruct the jury to return a verdict of acquittal upon the ground that the evidence disclosed that defendant's constitutional rights had been violated in having been forced to incriminate himself. The summary of this assignment as printed in the brief is as follows:

"On August 3, 1932, the above named defendant, in a different and separate criminal prosecution by the Government, was indicted on three counts for an alleged violation of Sec. 37, F.C.C. [18 U.S.C.A. § 88], of the National Prohibition Act. The indictment was returned in the same Court as the instant case and all proceedings therein were heard and determined by the same presiding United States District Judge. The indictment was quashed, defendant dismissed, the evidence suppressed and the property seized and ordered returned to the defendant, through appropriate motions and petitions made therefor, upon the ground that the search of defendant's premises without a search warrant was unlawful and 'that it was clear to the Court that the Constitutional rights of the defendant, Angelo Benetti, were invaded.' ".

On the grounds stated and before the Government had finished presenting its case, a motion was made for a directed verdict of acquittal. It was renewed when the government closed its case; at that time the court announced that the motion would be denied for the present and that it would be given further consideration. Appellant then took the stand and evidence was presented on his behalf. The motion was not renewed at the end of all the evidence. His failure to renew the motion for an instructed verdict would seem to bring the case within the rule that, having proceeded with the introduction of evidence, prior motions were waived and could only have been saved by renewing the application for a directed verdict at the end of all the testimony, which was not done. Goldberg v. United States, 5 Cir., 297 F. 98; Sacramento Suburban Fruit Lands Co. v. Melin, 9 Cir., 36 F. 2d 907; McAdams v. United States, 8 Cir., 74 F.2d 37; Mutual Life Ins. Co. of New York v. Wells Fargo Bank & Union Trust Co., 9 Cir., 86 F.2d 585. Further, there is no evidence presented in this case that in some other case against appellant, there had occurred an unlawful search and seizure of property, or that this evidence had been suppressed and ordered returned; all this rests entirely on the mere statements of counsel.

It is a mistake to assume that the court must take judicial notice of these matters even if they could be discovered among the records of the District Court. In any event there is no proof of any of these facts in the record here before us. A District Court is not required to take judicial notice of prior litigation in the same court and generally proof thereof must be produced. Morse v. Lewis, 4 Cir., 54 F.2d 1027, 1029. To prepare a record upon which a review can be had, concerning matters involved in some prior litigation, it is necessary that evidence of the material parts of proceedings in the former case be offered and embodied therein. This court heretofore has held that it will not take judicial knowledge of prior litigation unless proof thereof appears in the record. National Surety Co. v. United States, 9 Cir., 29 F.2d 92, 97.

Appellant's position here seems to be to assume that in some proceeding which could be found in the files of the trial court an unlawful search and seizure of defendant's property had taken place; that said files, which were not produced, would disclose that upon the trial of appellant on a charge of violating the National Prohibition Act in which this evidence, unlawfully seized, was offered, the trial court on being advised had suppressed the same and the

prosecution had failed; that because of such proceedings, the appellant became immune from ever being proceeded against for any violation of law whatever which was in any manner connected with or grew out of, any unlawful dealings in liquor, and that in this case particularly he could not be prosecuted for unlawfully evading payment of the tax upon his income which he derived from the illegal sale of liquor.

As supporting his position, appellant cites Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A. L.R. 1426; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. These authorities do not support any such extreme contention as is here made. In these cases it was sought to make use of the very evidence that had been suppressed. There was nothing of that kind in this case. Here the most that could be said was that, as a result of the unlawful seizure, the government was made aware that appellant was illegally engaged in selling intoxicating liquor which aroused suspicion that appellant was evading full payment of his income tax. That this caused the investigation whereby the government came into possession of other perfectly legal evidence which was in every way competent and admissible, unless appellant's claim of immunity is sustained.

The appellant told the agents that several years before the investigation there had been a seizure of liquor. The agents made no effort to determine whether the seizure was lawful or illegal, as this was of no importance to them in their investigation of appellant's income. No evidence of the alleged unlawful search and seizure was offered by the government. No evidence of it was offered by appellant. There was no showing as to any prior action or of any connection between this prosecution and a prior charge of violating the prohibition act.

Even if the crime for which appellant was indicted was revealed by an illegal search and seizure in another case, he would not be immune from prosecution and his conviction cannot be set aside if sustained by evidence obtained from independent sources and no evidence illegally seized was used against him. Constitutional provisions forbidding the use of evidence secured in an illegal way are not to be construed to mean that the facts thus disclosed are forever inaccessible. In the opinion in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426, relied upon by appellant, there is language used by Justice Holmes which sustains this view. At page 392, 40 S.Ct. at page 183, it was said:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. *Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others * * *.*" (Italics our own.)

In addition to the claim of immunity under the Constitution, appellant also claims immunity under provisions of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. Similarly there is no merit in any of these contentions.

Appellant appeared before the agents voluntarily, and, after being sworn and before giving any testimony, he was advised of his constitutional rights, and also that anything he said or any documents which he produced could be used against him. He stated that his answers would be free and voluntary. He reiterated this after his testimony was concluded and before he signed the statement. Had he been summoned to appear involuntarily, he, nevertheless, would have no right to complain here for the reason that he did not claim any privilege of immunity. He therefore waived it. Such claim now comes too late. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020; United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376.

Another assignment of error is to the effect that: "The Court erred in overruling objections interposed in certain of the cross-examination of the defendant with respect to defendant's motives and intentions regarding his alleged infraction of the so-called Prohibition Law, an entirely different, separate and distinct offense, for which he had been previously indicted and which indictment had been quashed by the Court, and the defendant exonerated and permitted to go free of said charge."

Considerable testimony given on the trial preceding the objections and discussed

in connection therewith in the District Court is printed in the record. Most of it has no relevancy and to reproduce it here would serve no purpose. It is sufficient to point out as heretofore noted that there was no testimony anywhere in the record that the defendant had been previously indicted, or that the indictment had been quashed, or that the defendant had been exonerated. In fact the record shows that a question asked of defendant as to his motives with respect to the law of bootlegging was objected to and excluded.

The manner in which the error here urged came into the record is as follows: Appellant, called as a witness in his own behalf, on direct examination was asked:

"Did you have any will or desire at any time that you filed these returns to defraud the government out of anything? A. Never."

* * * *

"Q. Did you have any bad motive at all when you filed your income tax returns over these years, including 1929, 1930, 1931? A. No, I didn't have any bad motives."

On cross-examination defendant was asked:

"Mr. Benetti, you testified as a matter of fact, in your direct examination, that you never intended to defraud the Government. Is that correct?".

Objection was made and after discussion the Court suggested that the question be reframed. Defendant was then asked:

"Mr. Benetti, was it your intent to defraud the Government? A. I had no intention."

After the question had been answered an objection was made and the objection overruled but no exception to the ruling is noted in the record. Defendant was then asked on further cross-examination: "Was it your intention to be an honest, law-abiding citizen?" which was objected to as being incompetent and irrelevant and not addressed to this particular issue. The objection was overruled and an exception lodged.

Then the following occurred:

"Mr. Platt: And we assign the ruling as prejudicial error, upon the ground that counsel is attempting to prejudice the jury for the reason that this defendant has once been indicted for a violation of the Prohibition Law, that although he has since been exonerated—

"The Court: Neither of those matters are before the Court.

"Judge Carville [U. S. Attorney]: That isn't before the Court at all.

"Mr. Platt: We assign it as prejudicial error, if the Court please, upon the ground that inquiries with respect to any alleged violation of the Prohibition Laws are foreign to the issues involved in this particular case, and the only purpose is to prejudice the jury against this defendant.

"Mr. Craven [Attny. for the Government]: I wish it to be expressly understood that we are not inquiring in regard to the violation of the Prohibition Act, but are inquiring in regard to the violation of the Internal Revenue Law and further to impeach this defendant.

"(Question read)

"The Court: Answer the question."

On further cross-examination the following occurred:

"Q. Do you remember, Mr. Benetti, in any conversation you had with Mr. Chase that he asked you to make a full disclosure of all of your income?

"Mr. Platt: Objected to on the ground it is assuming something not in evidence. The Government put on all these witnesses and I challenge them to find in the record any testimony like that given by either one of these gentlemen.

"The Court: The objection to the question will be overruled.

"Mr. Platt: Exception noted."

It will be remembered that appellant on his direct examination had been interrogated and given testimony as to his motives and intentions in filing his income tax returns. These questions asked on cross-examination and objected to, as pointed out by the District Attorney, were for the purpose of ascertaining what appellant's motives were with regard to the violations of the Internal Revenue Law and that no inquiries were being made in regard to violations of the Prohibition Act. The questions asked were within the scope of the cross-examination and related to matters brought out on direct examination.

Error is also predicated upon certain statements made by counsel for the government, upon the argument to the jury. The evidence of appellant admitted that he was a bootlegger; that he had derived income from that business; that he had not reported said income in his tax returns, claim-

ing that he had omitted to do so, in good faith, having been told by Mr. Cooper, a Revenue Agent, who had died before the trial, that appellant was not required to report income derived from any unlawful business. In addressing the jury, the government attorney said:

"Now, gentlemen, the court will instruct you that an officer of the Federal Government is presumed to have done his duties, and to have done his duties in a lawful manner, and, therefore, Mr. Cooper didn't tell Mr. Benetti that he didn't have to put his income from bootlegging business in his returns, although it is very convenient, gentlemen, to blame this on to a dead man, very convenient. * * * Now, as I said, the Court will instruct you Mr. Cooper was presumed to have done his duty and therefore didn't tell Mr. Benetti to violate the law.

"Mr. Platt: I submit is your Honor going to instruct the jury that Mr. Cooper was presumed to have done his duty and therefore did not tell Mr. Benetti this?

"The Court: I am going to instruct only in regard to the law and his duties.

"Mr. Platt: I therefore assign that as misstatement of conduct and prejudicial error."

Then the Deputy United States Attorney continued as follows: "The reason I have stated the Court will instruct you is the fact that the Court will instruct you Mr. Cooper was presumed to have done his duty, and therefore, if he did his duty, he did not tell him to keep that out of his returns. Isn't that logical? * * *"

Further in his argument, the Deputy United States Attorney made the following statement:

"Gentlemen, in the evidence, Mr. Benetti states that he was a citizen of the United States and as such he takes oath to uphold the laws of the United States. Did Mr. Benetti do that? He admitted bootlegging. He swore that in this case and still, as a citizen of the United States he took oath to uphold the laws of the United States, and then he would have you believe he is the soul of honesty. I ask you to take that into consideration.

"Mr. Platt: We assign statement of counsel with respect to the fact Mr. Benetti admitted he was a bootlegger as misconduct and prejudicial error.

"Mr. Craven: Gentlemen, I told you at the outset we are not interested in the fact that Mr. Benetti was a bootlegger, not in the fact. We are interested in his income from bootlegging that is all, but you can take these things into consideration to determine his credibility."

The argument of government counsel that the deceased Revenue Agent, Cooper, did not tell appellant that he need not report his income received from bootlegging, based upon the presumption that federal officers do their duty, was not improper comment upon the evidence. Johnson v. United States, 9 Cir., 247 F. 92; United States v. Chemical Foundation, D. C., 294 F. 300, affirmed, 3 Cir., 5 F.2d 191. Likewise the allusion to appellant's activities as a bootlegger, specifically limited as it was, furnishes no ground for reversal. Capone v. United States, 7 Cir., 51 F.2d 609, 76 A.L.R. 1534.

In this connection the Court instructed the jury as follows: "You are further instructed that the presumption of law is that a public official, entrusted with a public duty, performs that duty in a lawful manner. This presumption in this case applied to the testimony given by the defendant, Angelo Benetti, concerning E. C. Cooper, a Collector of Internal Revenue, wherein he testifies Mr. Cooper told him he was not required to disclose in his income tax returns money or profits received by him on account of operation of illegal business. This presumption must be overcome by the defendant by competent evidence in this case, and in this particular case by the testimony of the defendant, to the extent that a reasonable doubt shall be raised in your minds as to whether the statement contributed [sic] to Cooper was made by him. The evidence discloses that Mr. Cooper is dead and is not available as a witness in this trial. This being so, the testimony of Benetti, of what Mr. Cooper told him, must be received by you with caution and the closest scrutiny and weighed by you in the light of all of the testimony and evidence in the case."

And later at the request of appellant's counsel the court added the following: "Oh yes. You are instructed that, in connection with the instructions heretofore given with respect to the duties of officers, the presumption that officers perform their duties, an officer who, thru a mistake of law or fact, did not carry out the duties of his office, would not necessarily there be guilty of a criminal offense. It would be only in the case of a wilful violation of the

270

duty of an officer in which the officer himself would be guilty. If you believe from the evidence that Cooper told the defendant, as testified to by the defendant, that he was not required to make a return, and that was a mistake upon the part of Mr. Cooper, then in no sense would Mr. Cooper be guilty. If it was not an honest mistake, then he, himself, would also be liable as violating the law. As before stated, the presumption is that officers perform their duties and that presumption prevails until it is overcome by the evidence satisfactory to the jury. So in determining that material point of the case, you are to consider, not only the testimony of the defendant, but the presumption of law surrounding the Deputy Collector of Internal Revenue."

These instructions of the court made clear to the jury the limitations they were to exercise in considering the admitted fact that appellant had been engaged in the illegal sale of intoxicating liquors and also served to indicate the proper application of the argument of government counsel in reference to these activities of appellant and also explained the presumption of law applicable to the testimony given by appellant concerning statements made to him by the deceased Revenue Agent, which pointed out the manner in which the argument of government counsel should be properly applied.

█ Error is also claimed in the failure of the court to give the following special instructions requested by the defendant.

"You are further instructed that there has been some testimony offered in the case with respect to an alleged violation by the defendant of the so-called 'Prohibition Act.' I charge you that the defendant was acquitted of this alleged offense and that the indictment against him was quashed and dismissed.

"You are further instructed that no evidence concerning this alleged offense should in any particular at all prejudice you against Angelo Benetti, the defendant in the present case. It was determined by the Court that the Government had violated the fourth amendment of the Constitution of the United States through an unlawful search and seizure and that the defendant was entitled to go free.

"I further charge you that the fact of the indictment brought against him for an alleged violation of the prohibition law should not prejudice you at all in arriving at your verdict in the present case."

As heretofore pointed out there was no evidence offered by the defendant of any record of any such indictment for the alleged violation of the prohibition law or of any proceeding of search and seizure and nothing in relation thereto appears in this case except the voluntary statement made by defendant to the Revenue Agents that he had been engaged in the unlawful sale of intoxicating liquor from which he derived income. All the other matters set forth are merely the statements of counsel which are not evidence. In this regard the court instructed the jury as follows:

"You are further instructed that there has been some testimony offered in the case with respect to an alleged violation by the defendant of the National Prohibition Act. You are instructed that there is no evidence in this case of any conviction of the defendant of the violation of that Act. The fact, as shown by the evidence in this case, that the defendant for a time was engaged in the production of liquor and the sale thereof, during the time the National Prohibition Act was in force, is the only matter, so far as that act is concerned, which should be given any attention by the jury. The important point in this case is whether the defendant violated the provision of the law with respect to income tax report.".

█ As the requested instruction embodied statements not correct in law and no exception having been taken to the instruction which was given, there is no error in this regard for us to review.

Denial of a motion for new trial in this case was proper and ordinarily is not assignable error. Mutual Life Ins. Co. v. Wells Fargo Bank & Union Trust Co., 9 Cir., 86 F.2d 585.

Affirmed.