### Stanley R. HEMPHILL v. UNITED STATES.

### No. 9056.

Circuit Court of Appeals, Ninth Circuit.

June 3, 1940.

Rehearing Denied July 25, 1940.

---

4 See footnote 2.

506

Hugh Miracle, Melville Monheimer, and Van C. Griffin, all of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., and F. A. Pellegrini and G. D. Hile, Asst. U. S. Attys., all of Seattle, Wash., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Stanley R. Hemphill was found guilty of using the mails to defraud (18 U.S.C.A. § 338) and was sentenced to serve twenty-one months in the penitentiary.

■ The first error assigned in the brief of appellant attacks the sufficiency of the evidence to support the judgment, a question raised before the trial judge, as appellant appears to believe, through the medium of motions in arrest of judgment and for new trial, which were denied by the court below. At the conclusion of the Government's case in chief, counsel for the defendants challenged the sufficiency of the evidence by motion for directed verdict. The motion was denied and thereupon evidence was introduced in behalf of the defendants. At the conclusion of the evidence for the defense the, defendants rested, and the prosecution recalled one witness in rebuttal, whose testimony was objected to and excluded, whereupon both sides rested. There was no motion made at this time by the defendants, either for a directed verdict or otherwise. In this state of the record we are precluded from questioning the sufficiency of the evidence. A motion for directed verdict was made at the conclusion of the Government's case, which would have reserved the question, but the introduction of evidence by the defense after the denial of the motion, and the failure to renew such motion at the close of all of the evidence operated as a waiver. Lambert v. United States, 5 Cir., 101 F.2d 960, 963; Crabb et al. v. United States, 10 Cir., 99 F.2d 325, 326; Benetti v. United States, 9 Cir., 97 F.2d 263, 266; Cox v. United States, 8 Cir., 96 F.2d 41, 43; Condic et al. v. United States, 7 Cir., 90 F.2d 786, 788; Girson et al. v. United States, 9 Cir., 88 F.2d 358, 359, 360; Mitton v. United States, 9 Cir., 83 F.2d 278, 279; Pawley v. United States, 9 Cir., 73 F.2d 907, 908; Baldwin et al. v. United States, 9 Cir., 72 F.2d 810, 812; Critzer v. United States, 9 Cir., 8 F.2d 266; Deupree v. United States, 9 Cir., 2 F.2d 44, 45.

■■ "The denial of appellant's motion for a new trial was not assignable as error [cases cited], nor was the denial of his motion in arrest of judgment. [Cases cited.]" Sutton v. United States, 9 Cir., 79 F.2d 863, 865, 866. Where no motion is made by defendants for an instructed verdict, "the case falls within the well-settled rule that insufficiency of the evidence to justify the verdict cannot be raised for the first time by a motion for a new trial or in the appellate court. [Cases cited.]" Utley v. United States, 9 Cir., 5 F.2d 963, 964. A motion in arrest of judgment does not test the sufficiency of the evidence. 15 Am.Jur. p. 100, § 437.

■ The two remaining assignments of error relate to the admission in evidence of certain testimony claimed by appellant to be prejudicial. The defendant Hemphill called as a witness John J. Sullivan, an attorney who had entered his appearance for defendant Hemphill, but did not participate in the trial. Sullivan testified that he had known Hemphill for about 8 years and that the latter's reputation for truth and veracity was very good, and then went on to testify as to certain advice given Hemphill relative to contracts

and advertising. In the course of the cross-examination conducted by the Assistant United States Attorney, the witness was asked, "Didn't you tell him you would advise Mr. Hemphill to plead guilty?" Appellant contends this question was highly prejudicial, but did not object to it at the trial. The circumstances occurred as follows:

"Q. Did you do anything other than send Mr. Hemphill up to Mr. Swenson [the Post Office Inspector]? A. I talked to Mr. Swenson, myself.

"Q. What did you tell Mr. Swenson? A. I think I told Mr. Swenson—

"Mr. Moriarty: (Interrupting) I object to that as not proper cross-examination.

"The Court: Overruled.

"A. I think I told Mr. Swenson I had a high personal regard for Mr. Hemphill, I thought he may have been careless, but I didn't think at heart he willfully would do a wrong to a member of his organization (Mr. Swenson was, also, that type of man) —wouldn't do what he was charged with— I wanted to cooperate with him, feeling that he would get a square deal with Mr. Swenson.

"Q. What else did you tell Mr. Swenson? A. That is all I recollect.

"Q. Didn't you tell him you would advise Mr. Hemphill to plead guilty? A. I told him this—

"Q. (Interrupting) Answer my question. I require the witness to answer the questions.

"The Court: He may answer the question.

"A. I didn't say anything of the kind—advise him to plead guilty.

"Q. You didn't tell him that? A. No.

"Q. What did you say? A. I told Mr. Swenson, if, after learning all the facts concerning this, if I believe he had violated the law, I would recommend he plead guilty.

"Q. But you definitely didn't tell him you would advise him to plead guilty? A. No —how could I advise a man to plead guilty when I didn't know the facts.

"Q. I am not interested in that. You have advised Mr. Hemphill relative to the mail fraud law? A. At the time of drawing up these contracts, yes."

The only objection which was made upon the ground of not proper cross-examina-tion was taken by Mr. Moriarty, counsel for one Keohone, a defendant who is not appealing. It will be observed that no exception was taken to the overruling of the objection, and no motion to strike was made. The Federal appellate courts have steadfastly refused to notice claimed errors not properly called to the attention of the trial court. This instance is no exception to the general rule.

True, we have the right under our rules, should we choose to exercise it, to notice plain error, unassigned or unnoticed in the trial court, to prevent a miscarriage of justice in an exceptional case, where the error is particularly harmful. But that is not the case here. While we think the harm done by the question was mitigated by the answer and that no prejudice appears sufficient to warrant a reversal, nevertheless we do not wish to be understood as approving the question. It went beyond the subject matter of the direct examination and should not have been asked.

■ Lastly, the appellant urges the trial court erred in permitting the introduction in evidence of testimony of witness Colhour relative to a transaction concerning a typewriter of which Colhour was the owner. The objectionable testimony, which appellant claims casts an inference that he had stolen the writing machine, is contained in the following:

"Q. [By Assistant United States Attorney] Calling your attention to the time that you made payment on your contract, for your course, Mr. Colhour, I will ask you if you made payment by way of any other medium except money or attempted to do so? A. Yes.

"Q. What? A. I had a typewriter, Underwood typewriter, valued at $35.00.

"Q. Did you talk to Mr. Hemphill about that typewriter? A. Yes.

"Q. What was that conversation about, when and where? A. It was before I made my first payment; I asked Mr. Hemphill if I could use that as part payment, he informed me that I could not, but that I could bring it down, it was always possible to sell it and that he would give me the money for it.

"Q. Did you ever have any subsequent— did you bring the typewriter down? A. Yes.

"Q. Who did you leave it with? A. I believe it was turned over to Jack Genault.

508

"Q. Did you ever give it to Mr. Hemphill? A. I brought it into the office.

"Q. Did he know it was there that you know of? A. Yes.

"Q. Did you have a conversation with him subsequently in regard to the typewriter? A. Yes.

"Q. What was that conversation and when and where? A. After we moved up to Pine Street, I asked Mr. Hemphill in regard to it.

"Q. What did you say? A. I asked him if he sold my typewriter.

"Mr. Miracle [counsel for Hemphill]: I object to it as incompetent, irrelevant and immaterial.

"The Court: Overruled.

"Mr. Miracle: Exception.

"The Court: Exception allowed.

"Q. What did he say, Mr. Colhour? A. He informed me he didn't know where it was, that he had one missing, himself.

"Q. Did you ever get it back? A. No."

The only objection made to any of this line of testimony was interposed after a question was answered. An exception was taken, but there was no motion to strike. The objection, even if well taken, came too late; the question had already been answered. The only opportunity the court below would have had to correct the error, if error there was, would have been on a motion to strike, and no such motion was made. Buhler v. United States, 9 Cir., 33 F.2d 382, 383. See, generally, Duncan v. United States, 9 Cir., 68 F.2d 136, 140; Cronk et al. v. United States, 3 Cir., 63 F.2d 939, 940; Crono v. United States, 9 Cir., 59 F.2d 339, 340; Cheatham v. State of Texas, 5 Cir., 48 F.2d 749, 750; Allen et al. v. United States, 7 Cir., 4 F.2d 688, 694.

Moreover, it does not appear that there was any request made by appellant that the trial court instruct the jury to disregard the evidence which he now claims was inadmissible. In fact, the trial judge asked, "Counsel, have I overlooked anything? Are there any exceptions?" And no exceptions were taken. Concededly the instructions of the court stated the law adequately and with complete fairness.

We are unable to find any error operating to the substantial prejudice of the appellant. The judgment of the court below is

Affirmed.