## HENDRIX *v.* STATE

[No. 195, October Term, 1951.]

*Decided June 17, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*John S. White* and *Rudolf A. Carrico,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Robert T. Barbour, State's Attorney for Charles County,* and *George W. Bowling, Acting State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

C. Walter Hendrix, age 43, of Silver Spring, was convicted in the Circuit Court for Charles County on the

statutory charge of perjury, Code 1939, art. 27, sec. 527, and was sentenced to the Maryland House of Correction for a term of six months. He has appealed here from the judgment of conviction.

On August 8, 1951, defendant, who was the manager of an amusement place, known as the Monte Carlo Pier, on the Potomac River at Colonial Beach, Virginia, was informed by one of his employees, Willard Royster, that the sum of $35 had been stolen from the pier and Judson Brown was being held on the charge of larceny. Defendant went to the police station and questioned Brown, who had already admitted his guilt and turned the money over to a police officer. Defendant testified that Brown told him: "I was standing there by the bar, and every time the man opened the cash register, the money was in front of me. When he turned his back, I just reached over and grabbed a handful of it." Defendant, who was a deputy sheriff, took Brown to La Plata, the county seat, and swore out a warrant charging him with stealing $35, "the property of the said C. W. Hendrix."

On August 10 Trial Magistrate Crist conducted a preliminary hearing on the warrant to determine whether Brown should be held for the action of the grand jury. Defendant testified at the hearing that the money had been stolen from Harry Hickey, who had applied for and obtained the license for the liquor bar operated by defendant on the pier. On motion by the State, the magistrate struck out the name "C. W. Hendrix" from the warrant and inserted the name "Harry Hickey." The magistrate thereupon held Brown for the action of the grand jury. But before the grand jury and at Brown's trial for larceny, defendant swore that the stolen money belonged to him. The State maintained that defendant committed perjury in swearing at the preliminary hearing before the magistrate that the stolen money was the property of Harry Hickey.

Defendant set up the defense that the liquor bar was licensed in Hickey's name and the money in the cash register was technically Hickey's money; that he be-

lieved at first that Brown had stolen the money from the cash register; that he learned afterwards that he had taken it from a drawer about 15 feet away, which was used to furnish change for patrons using the slot machines; and that none of the cash in the drawer was from the cash register. Defendant claimed that he corrected his error when he appeared before the grand jury. "I told the grand jury," he said, "that it was a mistake where the money came from, that the money did not come out of the cash register, that the money came out of this drawer at the end of the bar."

The State, on the other hand, undertook to show that Hickey had no interest in the business. Defendant admitted that he had been informed that an applicant for a liquor license must be a resident of the county in which the license is sought and must also have a pecuniary interest in the business to be conducted under the license; and since he was a resident of Montgomery County, he asked Hickey, who was a resident of Charles County, if he would apply for the license, and Hickey agreed to do so. Defendant also admitted that he had never transacted any business with Hickey concerning the merchandise or the operation of the business. He admitted that he deposited all cash from the cash register in the account of General Amusement Company, and that he his wife were the only persons who could withdraw from that account.

Defendant objected to ten rulings on evidence. We find no reversible error in these rulings.

(1) The Court refused to allow the defense to ask Sheriff Cooksey whether Judson Brown had testified at the preliminary hearing whether he had stolen the money from the cash register or from the drawer. In order to establish a right to introduce testimony of a witness given at a former trial, it is incumbent upon the proponent of such testimony to lay a proper predicate for its introduction by showing the unavailability of the witness. The burden of satisfying the court of the validity of the excuse for nonproduction of the witness lies

upon the party seeking to introduce the testimony. He must show that the witness is dead, insane, or beyond the jurisdiction of the court or on diligent inquiry cannot be found or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be produced as a witness on the second trial. In the absence of proof of some such circumstance, testimony of this character should be rejected. *Franklin Coal Co. v. McMillan*, 49 Md. 549, 559, 33 Am. Rep. 280; *People v. Elliott*, 172 N. Y. 146, 64 N. E. 837, 60 L. R. A. 318; *New York Central R. Co. v. Stevens*, 126 Ohio St. 395, 185 N. E. 542, 87 A. L. R. 884.

(2) The Court permitted Deputy Sheriff Shymansky to answer whether or not Hickey had a pier at Colonial Beach. The witness answered: "He does not have a pier over there." Defendant contended this was an opinion on a question of law. It is, of course, an accepted rule that a witness is not permitted to give his opinion on a question of law. *Ditch v. Western National Bank of Baltimore*, 79 Md. 192, 209, 29 A. 72, 138, 23 L. R. A. 164; *Standard Scale & Supply Co. v. Baltimore Enamel & Novelty Co.*, 136 Md. 278, 285, 110 A. 486, 9 A. L. R. 1502. Here, however, the witness did not give an opinion on a question of law. He merely stated a fact as he knew it that Hickey did not have a pier at the beach. Objections that proposed testimony states only a conclusion are sometimes pushed to extremes. Very often the simplest method is to leave such a question to the practical discretion of the trial court, and permit the witness to state a fact as he knows it and leave the ground of his belief to be developed by cross-examination.

(3) The Court permitted Deputy Sheriff Shymansky to answer who was in charge of the bar on the pier when he was there in September, 1951. He answered: "Mr. Hendrix." Defendant contended that this was an opinion on a question of law. But it was merely a statement

of fact by the witness as to who was in charge of the bar on the occasions when he was there.

(4) The Court refused to strike out the testimony of Deputy Sheriff Shymansky as to a conversation which he had with defendant on the pier. The witness had been asked whether he had any conversation with defendant concerning the ownership of the business. He answered: "I asked Mr. Hendrix who had the business, and he said the business was his. I asked him why was not the license up on the wall." Defendant contended that the Court should have stricken out the statement of the witness that the license was not displayed on the wall, and also his statement that defendant refused to let him see the license. Defendant argued that the conversation prejudiced him before the jury, making it appear that he was being tried not only for perjury, but also for a violation of that section of the Alcoholic Beverages Act which requires that every person receving a license shall frame it under glass and place it so that it shall at all times be conspicuous and easily read in his place of business. Code Supp. 1947, art. 2B, sec. 64. We are not impressed by that contention. The conversation was relevant to the question of ownership of the business. We are not convinced that the possibility that the testimony indicated that defendant may also have been guilty of some offense other than perjury misled the jury by making them think that the accused was being tried on two charges at once. As the Court plainly instructed the jury that the charge against defendant was perjury and thereupon read the perjury statute to them, the jury should have known the nature of the charge.

(5) The Court permitted the State to ask defendant whether he knew what the net profits of the bar were for the year 1950. Defendant claimed that he had agreed to pay Hickey 5 per cent of the gross receipts from the bar business, and that the sum of $700 which he had paid to Hickey in the first year of operation was his share of the receipts. Hickey, on the contrary,

asserted that defendant had agreed to pay him $700 each year merely for obtaining the license. Testimony as to the receipts and profits from the bar was relevant to refute defendant's version of the agreement. Defendant also complained that the testimony permitted the jury to speculate as to whether defendant had violated a provision of the Alcoholic Beverages Act. Even if it did, it was not objectionable.

(6) The Court struck out defendant's statement that he knew "any number of licenses" in the county that were operated by an owner in the name of another. Defendant had been asked: "Actually didn't you testify that way because, to be a legitimate business, the bar conducted under that license had to be in Harry Hickey's name?" He answered: "I would not necessarily say legitimate. I know of any number of licenses in this county that are operated in this way." Defendant insisted that, since he testified that he had sworn at the preliminary hearing that the money was Hickey's property because the license was in Hickey's name, he should have been permitted to say that he considered that practice customary in Charles County. As the statement was not material to the issue, it was properly stricken out. If defendant had unlawfully employed Hickey to apply for a license for his business, the fact that any other liquor dealers had been operating in the same way would not have any bearing on the ownership of the property.

(7) The Court permitted the State to ask defendant whether a large sum of money had disappeared from his place of business in the previous summer. Defendant contended that this question was irrelevant because it pertained not to the Monte Carlo Pier, but to the Little Steel Pier, which defendant operated in his own name. The State has explained, however, that when the question was asked, the Court was apparently under the impression that the money had been stolen from the Monte Carlo Pier, and that as soon as it was learned that the money had been stolen from another pier, the

subject was abandoned. The defense made no motion to strike out the answer. We do not think that testimony that a sum of money had disappeared from another pier was prejudicial to defendant.

(8) The Court refused to permit Royster, defendant's employee, to give his understanding as to whose money it was that was kept in the cash register. It is a fundamental rule of evidence that the testimony of witnesses upon matters within the scope of the common knowledge and experience of mankind, given upon the trial of a case, must be confined to statements of concrete facts within their own observation, knowledge and recollection, as distinguished from their opinions, inferences, impressions, and conclusions drawn from the facts. *Com'rs of Anne Arundel County v. State, to Use* of *Stansbury*, 107 Md. 210, 217, 68 A. 602, 14 L. R. A., N. S., 452. Hence, a witness may not testify as to his understanding of a fact, but only as to his knowledge of a fact. *Marvil Package Co. v. Ginther*, 154 Md. 213, 224, 140 A. 95.

(9) The Court struck out Royster's answer to the question whether Hickey ever had anything to do with his work on the pier. His answer was: "Well, if Mr. Hickey told me something to do behind the bar, I would have done it." Whether the witness would have done something for Hickey is wholly immaterial to the issue in the case.

(10) The Court struck out Royster's answer to the question whether he knew where the stolen money came from. His answer was: "Mr. Beavers said it came from the change. That is where he gave it to me from." The answer was properly stricken out because it was hearsay.

Defendant did not object to the advisory instructions in the Court below. In fact, when the Court asked whether there were any objections or suggestions, counsel for the defense said: "We are satisfied." Defendant now contends that the Court committed two plain errors materials to his rights.

Rule 6(g) of the Criminal Rules of Practice and Procedure provides as follows: "Upon appeal a party, in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the specific grounds of objection distinctly stated at that time. No other errors or assignments of errors in the instructions shall be considered by the Court of Appeals, but the Court of Appeals of its own motion may take cognizance of and correct any plain error material to the rights of the accused even though not included in the assignment of errors."

Defendant's first objection to the instructions is that they led the jury to believe that he was being tried for a violation of the Alcoholic Beverages Act as well as for perjury. We find no merit in that contention. The Court plainly instructed the jury as follows: "Now, the indictment in this case charges the defendant, Hendrix, with the crime of perjury." The Court then referred to the Maryland perjury statute and also read the statute to the jury.

Defendant also contended that there was no legally sufficient evidence of perjury. Defendant made no motion for a directed verdict in the Court below, and ordinarily in such circumstances, in the absence of lack of due process, *Apple v. State,* 190 Md. 661, 59 A. 2d 509, 512, the legal sufficiency of the evidence cannot be reviewed in the Court of Appeals. *Auchincloss v. State,* 200 Md. 310, 89 A. 2d 605. We find no reason to make an exception in this case.

As we have found no reversible error in the rulings of the trial Court, or any plain error in the charge material to the rights of the accused, the judgment of conviction will be affirmed.

*Judgment affirmed, with costs.*

MARKELL, J., delivered the following concurring opinion.

I concur in the decision and in the opinion, except the implication that the "plain error" provision in Rule 6(g) is not applicable to absence of legally sufficient evidence to convict. This provision of Rule 6(g) is similar to Rule 52 (b) of the Federal Rules of Criminal Procedure. In *United States v. Norton,* 2 Circ., 179 F. 2d 527, the defendant was convicted of violation of the Selective Service Act in failing to register. In reversing the judgment for absence of evidence legally sufficient to convict, the court, by Judge Swan, said, "* * *, we conclude that the crime for which he was indicted was not proven. It is true that the argument which has brought us to this conclusion was first advanced in the brief on appeal; it was not presented at the trial. However, Rule 52 (b) of the Federal Rules of Criminal Procedure, 18 U. S. C. A. provides: 'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' There can be no plainer error or defect than the absence of evidence justifying a conviction." 179 F. 2d 529. In *Hemphill v. United States,* 9 Circ., 112 F. 2d 505, the court refused to examine the sufficiency of the evidence to support the verdict on the ground that they were precluded by the introduction of evidence by the defense after the denial of a motion for a directed verdict at the close of the Government's case and the failure to renew the motion at the close of all the evidence. On *certiorari* the judgment was reversed in the following *per curiam* opinion, "The judgment is reversed and the cause remanded to the Circuit Court of Appeals with directions to consider the sufficiency of the evidence to support the verdict. *Hemphill v. United States,* 312 U. S. 657, 61 S. Ct. 729, 85 L. Ed. 1106. See also *United States v. Renee Ice Cream Co.,* 3 Circ., 160 F. 2d 353, 355 (per Goodrich, C. J.). Rule 6(g), including the "plain error" exception, was in force before and after the constitutional amendment [Art. 15, Sec. 5]

which became effective December 1, 1950. *Wright v. State*, 198 Md. 163, 81 A. 2d 602. Manifestly the constitutional amendment and the statute only broadened the power of the court from advising a verdict of "not guilty" to directing one. It did not narrow or impair the rule making power or the scope of Rule 6(c). In the instant case I agree that defendant's contention as to "plain error" is in fact a frivolous afterthought. I concurred in the *Auchincloss* case but understood it as finding no "plain error" worthy of discussion.