MARGARET K. COUNCILMAN, Administratrix, *v.* E. LEE LE COMPTE, Game Warden

[No. 8, April Term, 1941.]

428

*Decided July 11th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*V. Calvin Trice,* for the appellant.

*Norwood B. Orrick, Assistant Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

The appellants, John A. Councilman and Margaret K. Councilman, own a farm in Talbot County, Maryland, which has a base line water front, in excess of five hundred yards, on the Choptank River. Immediately adjoining the Councilman property, James H. Keester and wife own a farm which also borders on the Choptank River. At the river the Councilman and Keester properties are divided by a line which runs through the waters of a small creek called "Muddy Creek." At the point on the shore of the river where the two properties are di-

vided, by the line running through the creek, the river takes a decided change of course, which results in both properties fronting on, or being opposite, the same portion of the river. In other words, the Councilman property is East of the river and the Keester property is North.

The appellants secured a license, and erected a duck blind in the waters of the river immediately in front of their property. About the same time as the placing of the appellants, blind, a lessee, of the Keester property, Howard C. Eley, also erected a blind in front of the Keester property. Then, upon complaint to the State Game Warden by a third party, the Warden ordered Eley to move his blind to another location. After the Eley blind was moved and re-located, the Game Warden discovered, through a survey, that the Councilman and Eley blinds were less than five hundred yards apart. He then ordered the Councilman blind removed, and when his order was not obeyed, threatened to have the blind removed. The appellants then filed a bill in the Circuit Court for Talbot County, seeking to restrain the Game Warden from removing the blind. After hearing, the court dismissed the bill, and it is from that decree this appeal is taken.

The statute regulating duck blinds in the waters of this State, Art. 99, Sec. 47(a), is as follows: "(a) Whenever an owner of land bordering on any waters of this State shall desire to erect a booby, brush or stake blind in front of his property, or other person to whom he shall give permission, he shall not place same within 250 yards of the dividing line of any property owned by him and the adjoining property bordering on said waters (* * *), meaning a line extending out over the waters drawn direct from the dividing line of said properties at the shore line, unless with the consent of the adjoining landowner, same being for the purpose of allowing each landowner bordering on any of the waters of the State permission to avail himself of the privilege of setting, erecting or maintaining a booby, brush or stake blind in front of his property."

After the survey had been made under the orders of the Game Warden and a plat prepared, it was disclosed that the Councilman blind was less than two hundred and fifty yards from the line, designated on the plat, as the dividing line between the properties, out over the water.

An important question to be determined in this case is whether the line, designated by the Warden's survey as a dividing line, is properly located.

In considering that question, the manner in which the survey was made, and the information, or date, upon which it was based, are extremely important. The surveyor, Mr. Blain, testified he ran the lines as directed by a Deputy Game Warden, he said: "My instructions from the Game Warden were to take an established line on the map substantially in the middle of the river, and lay off from that what was almost substantially a parallelogram, from the mouth of Muddy Creek, on each side of the Keester property, and that was their interpretation of where the boundary between the properties was. Then, computing that line, I went down on shore and laid off a compass course and staked out those two lines. The Game Wardens themselves picked out what they considered the point of the Creek."

Manifestly, the method followed in running the line, purporting to be a true dividing line between the two properties, was not in accordance with the established rules of making true surveys, and the survey so made has neither weight, nor competency, as evidence upon which to base a decision for, or against, either of the parties who have equal rights over the waters common to both. *Marvil Package Co. v. Ginther*, 154 Md. 213, 140 A. 95.

The method adopted of extending a line dividing the Councilman and Keester portion over the river was not the method prescribed by the statute. The statute, after prohibiting a blind from being placed nearer than two hundred and fifty yards to a dividing line, expressly describes the manner in which the dividing line should be laid out. The exact language of the statute is "meaning

a line extending out over the waters drawn direct from the dividing line of said properties at the shore line." If the accepted definition of the word "direct," which is "straight, not crooked, oblique, reflected or refracted," *Oxford Dictionary, Webster's New International,* is accepted as the meaning intended by the General Assembly when the statute was passed, then the line dividing the Keester and Councilman properties through Muddy Creek should have been extended straight out over the water of the river. But had that been done, the line would have run directly across the water front of Keester's property, with the result that Keester would have been denied his right to erect a blind in front of his property. Clearly that was not the intention of the statute. The unmistakable purpose of the statute was to protect, and not to deprive, each land owner's right to have a duck blind.

In order to avoid depriving Keester of a space for a blind, the Game Warden adopted the method here used, of running a line substantially at right angles to the center line of the river. The method, it appears, was followed because it had been used in some cases in other jurisdictions. But the circumstances under which that rule was used were not exactly similar to the unusual conditions found in this case. If all rivers followed a straight course, it would be a simple matter to follow either the rule adopted by the Warden, or that prescribed by the statute, and spaces allotted to all properties fronting on the river.

The rule followed in this case had exactly the same effect in depriving Councilman of a space for a blind, as the line, had it been run as directed by the statute, would have deprived Keester of his space for a blind.

Under those circumstances some other method of dividing waters which are common to two properties must be found, and it must be a method which will be equitable, and fair to all parties concerned. But if such a method cannot be found, then the statute cannot be applied against any of the interested parties, and the difficulty

must be adjusted by mutual accommodation, as that term was used in *Sheehy v. Thomas,* 155 Md. 688, 689, 142 A. 506.

It is practically impossible to lay down a fixed rule which will work equitably in all cases. Courses of rivers never are straight, nor do dividing lines of shore properties always run to the river at the same angle. Therefore, any rule adopted must be capable of application to varying conditions. That fact seems to have been recognized by the framers of the statute in this case, because, after directing that the dividing line be extended direct, it says, "unless with the consent of the adjoining landowner, same being for the purpose of allowing each landowner bordering on any of the waters of the State permission to avail himself of the privilege of setting * * * a * * * blind in front of his property."

It must be borne in mind that this is not a controversy between Keester and Councilman in reference to their respective rights, but it is an attempt by Councilman to prevent the State from determining which of two property owners shall be denied a privilege the statute sought to protect. The State cannot, through its agent, award to one, and deny to another, a right to which both, equally, are entitled. When it was discovered that the Councilman and Eley blinds were too near each other, the Game Warden had the authority to order the removal of both blinds until it had been determined, in a proper proceeding, which, if either, of the blinds was improperly located. Had that course been pursued, the matter would have been left to the interested parties to adjust, either by agreeing to use a common blind in their common waters, or by some other method, if one could be found, whereby both could have a blind without infringing on the rights of the other. If the parties cannot adjust the matter, then neither would be entitled to a blind to the exclusion of the other.

There is nothing in the record in this case to show that the blind belonging to Eley or to Bartlett, who first complained of the Eley blind, is properly placed. It may

well be that a proper survey will find a means whereby Councilman, Eley and Bartlett, each may have blinds which will not conflict.

Under the particular circumstances in this case, and because of a survey improperly made, the decree must be reversed, and the cause remanded in order that the appellants rights may be protected pending a proper adjustment of the matter, either by agreement of the parties interested, or by the appropriate action of the State Game Warden, as herein indicated.

*Decree reversed and cause remanded.*
*Appellee to pay the costs.*

JOHNSON, J., concurs in the result.

COLLINS, J., filed a dissenting opinion, as follows:

From the record and the plats filed in this case, it is shown that the shore line of the Keester property runs in a general direction parallel to the channel of the Choptank River, while the shore line of the property of Councilman, the appellant, runs in a general direction approximately diagonally to the channel of the Choptank River. The Keester property is, therefore, almost directly opposite the middle line of the river while the property of the appellant runs more or less diagonally to the middle line of the Choptank River. As pointed out in the majority opinion, the statute providing for the erection of booby, brush or stake blinds provides in part "* * * he shall not place same within 250 yards of the dividing line of any property owned by him and the adjoining property bordering on said waters (* * *) meaning a line extending out over the waters drawn direct from the dividing line of said properties at the shore line * *." The statute is silent as to the *course* in which the line of said properties at the shore line should be extended out over the waters other that it should be run "direct from the dividing line." Obviously, as stated in the majority opinion, the Legislature did not intend that the division

line should be extended out over the waters in the same direction as such division line runs on the land or be a continuation of the dividing line. *Sheehy v. Thomas,* 155 Md. 688, 142 A. 506: If this were the case, the owner of a triangular plot could, by continuing his lines over the water, cut off all rights of his neighbors. In what direction should the dividing line be extended out over the waters for the purpose of determining whether the blind in question is within two hundred and fifty yards of said dividing line?

The two farms are divided by Muddy Creek which empties into the Choptank River and therefore the dividing line between the two farms is Muddy Creek. The surveyor for the appellee placed a stake slightly to the northeast of the mouth of Muddy Creek as his beginning point and nearer the Keester property. If he had placed it at the exact middle of the creek, it would have been closer to the line of appellant's shore. It is stipulated and agreed that the Councilman blind is eighty-five yards from the line A-B drawn from the stake A slightly to the northeast of the mouth of Muddy Creek approximately at right angles to the middle line of the Choptank River. If this line A-B is the correct dividing line out over the waters, then the Councilman blind is one hundred and sixty-five yards nearer to the dividing line than the statute allows.

As pointed out by the chancellor below, the object of the statute is to give a just and equitable apportionment of the water frontage to riparian owners and such riparian owners are limited under the statute to the waters directly in front of their respective properties and the blind must be 250 yards from the dividing line. In cases where the shore lines are straight and run parallel to the line of the channel and the middle of the river, the statute is not hard to interpret, but as in the instant case where the shore lines are irregular and run almost diagonally to each other, it is difficult to make a fair proportionment of the riparian rights. It seems that the most equitable adjustment where the shore line is ir-

regular is to run the division line from the original division line on the shore at right angles with a line along the main channel in the direction of the general course of the current. *Gray v. Deluce,* 5 Cush. Mass. 9; *Stockham v. Browning,* 18 N. J. Eq. 390, 391; *Aborn v. Smith,* 12 R. I. 370; *Mutual Chemical Company v. Baltimore,* Daily Record, July 16th, 1940. Quoting *Thorton v. Grant,* 10 R. I. 477, at page 489: "The rule is this: Draw a line along the main channel in the direction of the general course of the current in front of the two estates, and from the line so drawn, and at right angles with it, draw a line to meet the original division line on the shore." As was said in the case of *Aborn v. Smith,* supra, 12 R. I. at page 373, "It has the great recommendation of simplicity of application." The division line in the instant case was run in this manner. As to the inaccuracy of the survey, the appellant cannot complain because the stake A at the mouth of Muddy Creek was not placed in the precise middle of the mouth of that creek as a starting point. If this had been done, the point A would have been closer to the line of the Councilman shore. Nor can he complain that the line A-B met the middle line of the Choptank River at 90° 5′. If these deviations had not been made, the line would have been closer to the Councilman shore and would have made less water space available to him for a blind. The appellant is precluded from complaining of these slight variations as they are in his favor.

As stated in the majority opinion, the purpose of the statute is to protect each land owner's right to have a duck blind. There is nothing in the record to show that Councilman could not have a blind by placing it two hundred and fifty yards from the dividing line as fixed by the Game Warden, nor does appellant in his brief contend that a blind at such a location would not be possible off the appellant's shore. Exhibit A, the last plat filed in the record, in fact indicates that a blind would be possible at such a location. It was stipulated and agreed that the appellant "has 1,700 and some odd feet of base

line waterfront on the Choptank River" (R. p. 71). It therefore, appearing that the division line between the two properties in dispute was extended out over the waters from the dividing line of said properties in the most equitable manner available, and that the blind in dispute is within eighty-five yards of this dividing line, while the law requires it to be two hundred and fifty yards from the dividing line, and that the State has the authority to regulate the killing of water fowl, *Wampler v. Le Compte,* 159 Md. 222, 150 A. 455, affirmed 282 U. S. 172, 51 S. Ct. 92, 75 L. Ed. 276, it seems to me that if appellant wishes to use his blind he should relocate it two hundred and fifty yards from the division line as laid down by the Game Warden and that the chancellor was correct in dismissing the bill and his decree should be affirmed.